Francis "Casey" J. Flynn
CA State Bar No. 304712
Law Office of Francis J. Flynn, Jr.
6220 West Third Street, #115
Los Angeles, CA 90036
francisflynn@gmail.com
(323) 424-4194 francisflynn@gmail.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| Joston Theney , <br><br>                                     Plaintiff, <br><br> v. <br><br> Christopher Otiko, <br><br>                                     Defendant, <br><br> Coast to Coast Podiatry, Inc. dba as Blood Red Films, <br><br>                                     Defendant, <br><br>             and <br><br> ImageWorks Entertainment International Inc, <br><br>                                     Defendant | Case No.:  [Case No.] <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT
AND DECLARATORY JUDGMENT RELIEF**

COMES NOW the Plaintiff Joston Theney ("Theney"), and for his Complaint against the above-named Defendants, states and alleges the following:

## JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiff's claim for copyright infringement and for declaratory judgment relief of ownership of the copyright to the work AXEMAN II: OVERKILL ("the Work") pursuant to 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a).

## VENUE

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and § 1400(a) because Defendants Christopher Otiko ("Otiko"), Coast to Coast Podiatry, Inc. dba Blood Red Films ("BRF"), as well as ImageWorks Entertainment International, Inc. ("ImageWorks") maintain their principal places of business in this District.

## THE PARTIES

3. Plaintiff Joston Theney is a resident of California with a home address of                , Los Angeles, CA 90027.

4. Defendant Otiko, on information and belief, has his business office at                , Marina Del Ray, CA 90292, and his home residence at                , West Hills CA 91307-3331.

5. Defendant Coast to Coast Podiatry, Inc. dba Blood Red Films is located at                , Marina del Ray, California, 09292, per the Fictitious Business Name Statement filed by Otiko on August 22, 2012 with the County of Los Angeles. The current address of Coast to Coast Podiatry, Inc., on information and belief, is                Reseda, CA 91335.

6. Defendant ImageWorks Entertainment International Inc. is a California corporation that is, on information and belief, in good standing, with its principle place of business located at                , Woodland Hills, CA 91367.

7. Based upon each of the above, venue is proper in the jurisdiction of this Court.

## STATEMENT OF FACTS

8. Plaintiff Joston Theney is a screenwriter, director and producer of motion pictures.

9. Mr. Theney wrote, directed, edited and produced the motion picture Axeman at Cutter's Creek, and obtained Copyright Registration PAu 3-690-388 for it on June 26, 2013. There is no dispute that Mr. Theney owns the copyright to the first Axeman movie.

10. Thereafter, in 2014, Mr. Theney wrote a derivative screenplay that is now at issue in this suit, i.e., **Axeman II: Overkill** ("the Work").

11. On April 20, 2015, Mr. Theney applied for and obtained Copyright Registration Txu 1-963-0522 for his screenplay.

12. Mr. Theney solely directed, edited and produced the motion picture **Axeman II: Overkill**.

13. Defendant Otiko is a podiatrist who desires to be in the movie business.

14. Defendant Otiko invested money in the original Axeman motion picture.

15. As condition of his investment, Defendant Otiko requested that he be listed in the credits as a writer and producer of the original Axeman film, to which Mr. Theney agreed, even though Otiko was neither a writer nor producer of the Work.

16. Defendant Otiko later invested approximately $52,000 dollars in the derivative film, **Axeman II: Overkill**.

17. As a condition of his investment in the Work, Otiko requested that he be listed in the credits and promotional materials of the Work as a writer and producer of the Work at issue, even though Otiko was neither a writer nor producer of the Work.

2

18. Again, Mr. Theney agreed to this condition.

19. Defendant Otiko did not actually write any part of the Work at issue.

20. Defendant Otiko did not direct any part of the Work at issue.

21. There is no "work for hire" agreement signed by Mr. Theney that would legally transfer his copyright to Otiko or BRF.

22. There is no signed agreement wherein Mr. Theney transferred his copyright to the Work to Otiko or BRF.

23. Mr. Theney and Defendant Otiko entered into a signed "Co-Production Agreement" with an electronic metadata date of January 28, 2016 (attached hereto as Exhibit A).

24. The "Co-Production Agreement" states in full that:

> This agreement was drafted to keep things transparent and easy to understand.
>
> 1. Joston Theney is the sole author and copyright holder for the literary work titled AXEMAN II: OVERKILL. He owns all right title and interest in and to the screenplay, characters and subsequent stories derived from the original work.
> 2. As the copyright holder, Joston Theney and his production company #SinningWorks owns all right title and interest in and to the feature film based on the AXEMAN II: OVERKILL literary work.
> 3. Christopher Otiko and his co-production company Coast to Coast dba Blood Red Films, are investors in the feature film based on the AXEMAN II: OVERKILL literary work.
> 4. Christopher Otiko and his co-production company Coast to Coast dba Blood Red Films are to receive credits in "name-only," meaning he had no actual duties or responsibilities in said role but received the titles for his investment. Those credits were: Executive Producer and Writer.
> 5. For Christopher Otiko's and his company Coast to Coast dba Blood Red Films' total investment of $51,641.25 in the feature film based on the AXEMAN II: OVERKILL literary work, they will receive a 50% share of said film's net revenue.
> 6. Joston Theney and his production company #SinningWorks has assigned Christopher Otiko and his co-production company Coast to Coast dba Blood

> Red Films the right to negotiate and sign Sales Agency Representation contracts for any sales agent and contract that both parties agree to.
> 7. Joston Theney and his production company #SinningWorks retains the sole right to negotiate, sign and/or refuse any distribution offer received. No agreement shall supersede this unless a modified Co-Production Agreement is signed by both parties.

Signatures below constitute both parties' understanding and acceptance of the terms listed above.

_____
Signature of Joston Theney
#SinningWorks

_____
Signature of Christopher Otiko
Coast to Coast dba Blood Red Films

25. Defendant Otiko and Mr. Theney worked together in an effort to market **Axeman II: Overkill** and release it to the public so that Defendant Otiko could recoup his investment, and then split the remaining profits 50/50.

26. Mr. Theney repeatedly told Defendant Otiko that he did not want to enter into a "distribution" type contract with any third party, but rather, wanted to control how much was received for licensing the film to any third party, therefore Mr. Theney gave Defendants BRF and Otiko the right to "negotiate and sign [any] Sales Agency Representation contracts for any sales agent and contract that both" Defendant Otiko and Mr. Theney agreed to.

27. Under a "distribution" contract, Mr. Theney would have no control over the amount of money his movie was licensed for.

4

28. Mr. Theney located Defendant ImageWorks Entertainment, International, Inc. ("ImageWorks"), and Mr. Theney and Mr. Otiko then began negotiations for sales agency agreement.

29. Mr. Theney made clear to ImageWorks that he was not going to agree to a distribution agreement, but desired a sales agency agreement.

30. ImageWorks represented that it was a sales agent and that the agreement would be a sales agency agreement.

31. ImageWorks sent Messrs. Theney and Otiko a draft agreement that stated, among other things, "**WHEREAS**, Producer wishes to appoint IEI the sole and exclusive sales agent of the Picture in the Territory as herein defined".

32. The draft agreement sent by ImageWorks *left blank* who the party negotiating with ImageWorks was, but defined the party entering into the agreement as the "Producer", i.e., the relevant portion of the word document appeared as follows:

> This Distribution Agreement ("Agreement") is effective as of October 28, 2014 (the "Effective Date") between Imageworks Entertainment International, Inc., with an address at 6140 Variel Avenue, Woodland Hills, Warner Center, CA 91367 ("IEI") and [_____] with an address at [address]. ("Producer").

33. The draft agreement further specified that the "Producer" "owns all right, title and interest, including copyright in and to, the motion picture currently entitled 'Axeman 2' (the 'Picture')."

34. Without Mr. Theney's knowledge or approval, and prior to the completion of the Work at issue in this suit, on October 30, 2014, Defendants Otiko and BRF

5

executed the agreement with ImageWorks by claiming that BRF was the "Producer" and falsely claiming that BRF owns all right, title, and interest, including copyright in and to, the Work at issue.

35. Otiko signed this contract with ImageWorks as the authorized signatory for BRF.

36. The contract between Defendants is attached hereto as Exhibit B.

37. Defendant Otiko represented and warranted in Exhibit B at p. 3, ¶ 15 that "(a) Producer has full right, power, legal capacity and authority to enter into and carry out the terms of this Agreement and Producer has no knowledge of any of its obligation (sic) that will interfere with its carrying out of such terms of this Agreement and grant the rights granted herein, and that there has been no prior sale or transfer of rights to the Picture or any party thereof; (b) the Picture is Producer's original work and does not now and will not violate any existing intellectual property rights, including, without limitation, copyright, trademark or any other proprietary or contractual rights, and that the Picture contains no matter which if published, will be harassing, libelous, obscene, or a violation of any rights of publicity or privacy, or any law regulation."

38. Defendants BRF's and Otiko's representations to Defendant ImageWorks were false, as BRF and/or Otiko did not own the copyright to the Work at issue and Otiko clearly knew that Mr. Theney owned all rights to the Work.

39. Prior to reviewing an executed copy of Exhibit B (wherein BRF falsely claimed ownership of the copyright to the Work), Mr. Theney delivered the original (and

6

his only copy of) the high resolution version of the Work to Defendant ImageWorks, believing that ImageWorks had entered into a "Sales Agency" agreement that allowed him to approve any deals that ImageWorks entered into.

40. As part of its agreement with BRF, ImageWorks requested chain of title documents showing that BRF owned the copyright to the Work.

41. Mr. Theney then communicated to ImageWorks that he owned the copyright, not BRF.

42. In response, ImageWorks sent the executed agreement (Exhibit B) to Mr. Theney, which Mr. Theney had never reviewed before.

43. After his review of the executed agreement, Mr. Theney learned for the first time that BRF claimed it owned the copyright to the Work.

44. Mr. Theney then notified ImageWorks and Otiko that he was the lawful owner of the copyright to the Work.

45. Thereafter, he and Defendant Otiko entered into Exhibit A, reaffirming his rights in the Work and Otiko's role.

46. Although Defendant Otiko did not have any rights to the copyrighted work, just *seven (7) days after* affirming Mr. Theney's rights, Defendant Otiko fraudulently applied for and obtained U.S. Copyright Reg. No. PAu003818121 to Mr. Theney's work.

47. Defendant Otiko fraudulently listed himself as one of the authors of the Work.

7

48. Specifically, Otiko falsely claimed that his authorship was the "entire motion picture, script/screenplay".

49. On May 11, 2017, Mr. Theney wrote Defendant Otiko and advised him that his registration of Axeman II: Overkill was contrary to their express, written agreement and therefore Mr. Theney was terminating Defendant Otiko's right to represent him and his Works (to the extent that any such rights remained).

50. Defendant Otiko responded that same day, stating "Please stop your ridiculous lies. If you need to communicate with me, do so through my attorney."

51. Also, beginning on May 10, 2017 and finishing on May 11, 2017, Mr. Theney applied for a copyright registration for his motion picture **Axeman II: Overkill**. The pending registration for his motion picture is Case No. 1-5102099981.

52. Mr. Theney submitted a low resolution version of his Work to the Copyright Office, which is currently the best form available to him.

## FIRST CAUSE OF ACTION
## Copyright Infringement (All Defendants)

53. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint.

54. As Plaintiff owns all right, title and interest in the Work, the Plaintiff has the sole right to reproduce the Work, the sole right to prepare derivative works based upon the Work, the sole right to distribute copies of the work to the public, and the sole right to display the copyrighted work to the public.

55. Attached hereto as Exhibit C is U.S. Copyright Registration TXU 1963552 for the screenplay to Axeman II: Overkill. Plaintiff Theney also applied for a copyright registration to his motion picture Axeman II: Overkill, which registration is currently pending.

56. On information and belief, one or both of the Defendants, or their agents, created derivative works to the Work by, among other things, changing the color and sound to the Work.

8

57. On information and belief, one or both of the Defendants have created copies of the Work, by, among other things, uploading a copy of the Work to servers for the website www.vimeo.com.

58. The above acts infringe Plaintiff's exclusive rights to the Work and constitute copyright infringement of Mr. Theney's copyrights to the screenplay and the motion picture.

59. Plaintiff has repeatedly demanded that the Defendants return the high resolution copy of his motion picture to him, so that he can market it, but Defendants have refused.

60. The Defendants have willfully infringed Plaintiff's rights, and Plaintiff is without a remedy at law because Defendants have Plaintiff's only high resolution copy of his Work.

> WHEREFORE, Plaintiffs request that the Court grant Plaintiff relief in the form of a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction barring Defendants from infringing Plaintiffs' rights any further, and granting Plaintiff damages as provided in 17 USC § 504, including statutory damages for willful infringement against each Defendant, or the Defendants' profits and Plaintiff's actual damages, whichever is greater.

## SECOND CAUSE OF ACTION
### Declaratory Judgement (All Defendants)

61. Plaintiff incorporates herein by reference all of the above paragraphs in this Complaint.

62. As Defendant Otiko has obtained a U.S. Copyright Registration for the Work, wherein Otiko falsely claimed that he was a co-author with Plaintiff, and because Otiko signed an agreement with Defendant ImageWorks wherein Otiko falsely claimed that BRF owns the copyright to the Work, an actual, justiciable controversy exists as to the ownership of the Work and the right to promote, market, license and distribute the Work.

63. Defendant ImageWorks lists on its website as part of its "film library" (http://www.imageworksent.com/Films/FilmLibrary.asp?txtQuickSearch_FilmTitle=%7B9BEB3529-D7A8-E411-8748-D4AE527C3B65%7D (last visited June 15, 2017)) the Work, but Defendant ImageWorks has no rights to the Work.

64. Defendants did not contribute to the Work in any way, and there is no written "Work for Hire" agreement that would possibly convey all or part of Mr. Theney's rights in the Work to the Defendants.

65. There is no written assignment of the copyright to BRF or Otiko that was signed by Mr. Theney.

66. There is no written agreement between Defendant ImageWorks and Plaintiff, and Defendant Otiko exceeded his right in entering into the agreement attached hereto as Exhibit B, which Defendant ImageWorks was made aware of in a timely manner.

67. Despite learning that Defendant Otiko exceeded the scope of his agency by entering into Exhibit B, Defendant ImageWorks nevertheless accepted as true Otiko's registration and has ignored Plaintiff's demands for the return of his motion picture.

68. Defendants continue to hold Plaintiff hostage by refusing to return his film, and ImageWorks and Otiko have demanded that Plaintiff compensate them for their alleged investments before releasing his film, and have ignored Plaintiff's demand for payment of his damages incurred due to the delays in marketing the film because of Otiko's false claim of copyright ownership, and Otiko's further false representation that BRF owns all copyright to the Work.

69. Further, Otiko falsely told the United States Copyright Office that he and Mr. Theney had joint ownership interests in the Work, and falsely represented that his authorship in the Work was the "entire motion picture, script/screenplay".

WHEREFORE, Plaintiff requests this Court to enter Judgment in Plaintiff's favor, and further, enter a Temporary Restraining Order and a Preliminary Injunction holding that Plaintiff owns all right, title and interest in the Work, and

that Defendants have no rights, title or interest in the Work, including any rights to distribute or promote the Work.

## THIRD CAUSE OF ACTION

## REPLEVIN AND/OR ACTION OF CLAIM AND DELIVERY

### (against ImageWorks)

70. Plaintiff incorporates herein by reference all of the above paragraphs in this Complaint.

71. ImageWorks has possession of the Plaintiff's only high resolution copy of the Work, but has refused to return it to the Plaintiff unless Plaintiff reimburses ImageWorks for costs it allegedly expended in creating art work for the Work and promoting the Work pursuant to its agreement with BRF.

72. Plaintiff has repeatedly explained to ImageWorks that its remedy is against Otiko and BRF, not the Plaintiff.

73. Despite having a remedy against Otiko and BRF, ImageWorks continues to demand payment from Plaintiff and refuses to return the Work to Mr. Theney.

74. Pursuant to Code Civ. Proc., § 512.010, Plaintiff may apply for a writ of possession when he provides an application under oath that shows the basis of his claim, that Plaintiff is entitled to possession of the property, that the property is being wrongfully detained by the Defendant, an explanation of how Defendant came to possess the property, the reason for the detention of the property, a description of the property, a statement of its value, a statement of the location of the property, and a statement that the property has not been taken for a tax, assessment, or fine, or seized under an execution against the property of the plaintiff.

75. A description of the property is the fully functioning hard drive that contains a high resolution version of the Work. Mr. Theney gave this fully functioning hard drive to ImageWorks.

76. The value of the Work is, on information and belief, at least $100,000.00.

11

77. The location of the Work is, on information and belief, at the office of Defendant ImageWorks, 6140 Variel Avenue, Woodland Hills, CA 91367.

78. Plaintiff avers that his hard drive at issue has not been taken for a tax, assessment, or fine, or seized under an execution against the property of the Plaintiff.

79. All of the elements of Code Civ. Proc., § 512.010 are met by this Complaint, therefore, upon filing of an affidavit reaffirming the above, Plaintiff has met all elements of the statute.

WHEREFORE, Plaintiff requests this Court to enter Judgment in Plaintiff's favor, and order ImageWorks to return Plaintiff's hard drive with his high resolution copy of the Work to Plaintiff forthwith.

## FOURTH CAUSE OF ACTION

## FRAUD (against Defendants BRF and Otiko)

80. Plaintiff incorporates herein by reference all of the above paragraphs in this Complaint.

81. Defendant BRF, the d/b/a/ for Coast to Coast Podiatry, Inc., fraudulently represented to Defendant ImageWorks that it owned all rights, including the copyright, to the Work, when it entered into the contract attached hereto as Exhibit B.

82. Defendant Otiko fraudulently represented to the U.S. Copyright Office that he was a co-author of the script/screenplay and the motion picture **Axeman II: Overkill**.

83. Otiko concealed from Plaintiff the fact that he applied for a U.S. Copyright Registration for the Work, and that he had represented to the U.S. Copyright Office that he was a co-author of the Work.

84. Otiko further concealed from Plaintiff the fact that he signed Exhibit B on behalf of Coast to Coast Podiatry Inc.'s wholly owned and controlled entity, BRF, and that he represented and warranted to Defendant ImageWorks that BRF owned all right, title and interest in the Work.

85. Otiko knew he was not an author of the screenplay/script and motion picture **Axeman II: Overkill**.

86. Otiko intended to defraud Plaintiff and did defraud Plaintiff.

87. Plaintiff's reliance in Otiko was justifiable, since Otiko and/or Coast to Coast Podiatry, Inc. had paid for the expenses in making the Work.

88. Plaintiff has been damaged by Otiko's and Coast to Coast Podiatry, Inc.'s fraud and fraudulent concealment.

WHEREFORE, Plaintiff requests this Court to enter Judgment in Plaintiff's favor, and award him damages and punitive damages to deter Otiko, Coast to Coast Podiatry Inc., and others similarly situated from engaging in such fraudulent actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

A. Ordering that Plaintiff is the sole author of the script and Motion Picture **Axeman II: Overkill** and clearing title to Plaintiff's Work;

B. Holding that Defendants infringed Plaintiff's copyright;

C. Holding that the Defendants' infringement was willful;

D. Ordering an accounting of Defendants' profits;

E. Awarding Plaintiff damages, the greater of statutory damages, or the Plaintiff's losses and the Defendants' profits;

F. Ordering Defendant ImageWorks to return the hard drive and the high resolution copy of the Motion Picture Axeman II: Overkill to Plaintiff forthwith;

G. Awarding punitive damages against Defendants Otiko and Coast to Coast Podiatry, Inc.

H. Entering an injunction barring Defendants from claiming any rights to the Work, ordering Defendants to return all copies of the work to Plaintiff forthwith, and ordering Defendants to destroy all electronic copies of the Work forthwith.

//

//

I.  Providing such further relief as the Court may deem fair and reasonable.

Dated June 17, 2017

Respectfully submitted,

By: */s/ Francis "Casey" J. Flynn*
    Francis "Casey" J. Flynn
    CA State Bar No. 304712
    6220 West Third Street, #115
    Los Angeles, CA 90036
    francisflynn@gmail.com
    (323) 424-4194

    *Attorney for Plaintiff*